CASE NO. 25-11504

---

# In the United States Court of Appeals
# Eleventh Circuit

OASIS CAPITAL, LLC,

*Appellant,*

v.

NASON, YEAGER, GERSON, HARRIS & FUMERO, P.A.,
and BRIAN S. BERNSTEIN, ESQ.,

*Appellees.*

---

*On Appeal from The United States District Court,*
*Southern District of Florida*

Case No. 9:22-cv-81913-AMC

---

**BRIEF OF APPELLEES, NASON, YEAGER, GERSON, HARRIS & FUMERO, P.A., and BRIAN S. BERNSTEIN, ESQ.**

---

COLE, SCOTT & KISSANE, P.A.
Tower Place – Suite 400
1900 Summit Tower Blvd.
Orlando, FL 32810
Telephone (321) 972-0071
Facsimile (321) 972-0099
therese.savona@csklegal.com
*Counsel for Appellees*

**CERTIFICATE OF INTERESTED PERSONS**

1. Alan L. Frank Law Associates, PC, *Firm for Plaintiff/Appellant Oasis Capital, LLC*
2. Bernstein, Brian S. Esq., *Defendant-Appellee*
3. Cannon, The Hon. Aileen M., *U.S. District Judge*
4. Cole, Scott & Kissane, P.A, *Firm for Defendants/Appellees, Nason, Yeager, Gerson, Harris & Fumero, P.A., and Brian S. Bernstein, Esq.*
5. Frank, Alan L., *Counsel for Plaintiff/Appellant Oasis Capital, LLC*
6. Frank, Evan Louis, *Counsel for Plaintiff/Appellant Oasis Capital, LLC*
7. Goldstein, Jeremy Franklin, *Trial Counsel for Defendants/Appellees, Nason, Yeager, Gerson, Harris & Fumero, P.A., and Brian S. Bernstein, Esq.*
8. Leiderman Shelomith Alexander + Somodevilla, PLLC, *Firm for Plaintiff/Appellant Oasis Capital, LLC*
9. Maldonado, Sheena S., *Trial Counsel for Defendants/Appellees, Nason, Yeager, Gerson, Harris & Fumero, P.A., and Brian S. Bernstein, Esq.*
10. Nason, Yeager, Gerson, Harris & Fumero, P.A., *Defendant-Appellee*
11. Oasis Capital, LLC, *Plaintiff-Appellant*
12. Postman, Barry Adam, *Trial Counsel for Defendants/Appellees, Nason, Yeager, Gerson, Harris & Fumero, P.A., and Brian S. Bernstein, Esq.*

13. Reinhart, The Hon Bruce E., *U.S. Magistrate Judge*

14. Savona, Therese A., *Appellate Counsel for Defendants/Appellees, Nason, Yeager, Gerson, Harris & Fumero, P.A., and Brian S. Bernstein, Esq*.

15. Shelomith, Zach, *Counsel for Plaintiff/Appellant Oasis Capital, LLC*

16. Vine, S. Jonathan, *Trial Counsel for Defendants/Appellees, Nason, Yeager, Gerson, Harris & Fumero, P.A., and Brian S. Bernstein, Esq*.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-5, Appellee, Nason, Yeager, Gerson, Harris & Fumero, P.A. is not a publicly traded corporation.

## **STATEMENT REGARDING ORAL ARGUMENT**

Pursuant to Federal Rule of Appellate Procedures 34(a) and Eleventh Circuit Rules 34-3(c) and 28-1(c), Appellees, Nason, Yeager, Gerson, Harris & Fumero, P.A. and Brian S. Bernstein, Esq., respectfully suggest that oral argument is not necessary to assist this Court in affirming the Final Judgment appropriately entered in their favor. The only reason Oasis requests oral argument is because "the first issue raised has not been addressed by Florida courts." (IB. i). However, this issue falls squarely within Florida's conflict of laws test that is well-established.

## TABLE OF CONTENTS

Page


CERTIFICATE OF INTERESTED PERSONS ........ i

CORPORATE DISCLOSURE STATEMENT ........ iii

STATEMENT REGARDING ORAL ARGUMENT ........ iv

TABLE OF CONTENTS ........ v

TABLE OF CITATIONS ........ vii

STATEMENT OF THE ISSUES ........ 1

STATEMENT OF THE CASE AND FACTS ........ 2

I. The Parties' Relationship, Events Leading to Litigation, and Allegations Brought Against Appellees ........ 2

II. Application of Florida Law v. New York Law and Conflict of Laws Analysis at Summary Judgment ........ 4

III. Proposed Pre-Trial Jury Instructions by Oasis Draw Objections by Appellees ........ 6

IV. The Case Proceeded to Trial ........ 8

STANDARD OF REVIEW ........ 15

I. Review of Conflict of Laws ........ 15

II. Review of Jury Instructions ........ 15

III. Review of Rule 50(a) Judgment as a Matter of Law ........ 16

SUMMARY OF THE ARGUMENT ........ 17

ARGUMENT ........ 19

I. Oasis' Challenge to The Application of Florida Law in This Diversity Case Is Not Before This Court; Even If Considered, Florida Law Prevails Under the Most Significant Relationship Test. ........ 19

A. Oasis Waived Its Position That New York Law Should Apply by Failing to Raise Its Choice of Law in Its Pleadings. ........ 19

B. Even If Considered by This Court, Florida Law Applies Because Florida Has the Most Significant Relationship with The Parties and The Underlying Events. ....21

C. With Florida Law Firmly Established, The Need to Consider Authorities from Other States Is Unnecessary. ....24

D. Certification to the Florida Supreme Court is Unnecessary Based on Settled Florida Law. ....30

II. The Trial Court Acted Within Its Discretion to Deny Oasis' Proposed Jury Instructions. ....31

A. Oasis' Proposed Jury Instruction at Trial Regarding an Attorney Revealing Client Confidences was a Topic for Expert Cross-Examination, Not Supported by Evidence, and Not Before the Jury. ....32

B. Oasis' Proposed Jury Instruction 22 Based on Violation of the Florida's Rules Related to Professional Conduct is Not Allowed under Florida Law. ....34

C. Oasis' Proposed Jury Instruction 33 Based on Ambiguity in the Scope of Legal Representation was Not Before the Jury. ....36

III. Judgment As a Matter of Law Was Appropriate on Oasis' Contract Claims, As Well As to Limit the Amount of Damages Requested from The Jury Related to The Generex Bankruptcy. ....38

A. No Evidence Supported the Provisions of Any Contract or Agreement Entered into by Oasis and Appellees. ....39

B. Oasis Failed to Present Any Evidence Regarding Collectability, Thereby Limiting the Amount of Damages for the Generex Transactions. ....43

CONCLUSION ....46

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ....47

CERTIFICATE OF SERVICE ....48

# TABLE OF AUTHORITIES

Page

**Cases**

*Abruzzo v. Haller,* 603 So. 2d 1338 (Fla. 1st DCA 1992).......................................39

*Adams v. Bainbridge-Decatur Cnty. Hosp. Auth.*, 888 F.2d 1356 (11th Cir. 1989)......................................................................................................16

*Applegate v. Barnett Bank of Tallahassee,* 377 So. 2d 1150 (Fla. 1979)................34

*Arabia v. Siedlecki*, 789 So. 2d 380 (Fla. 4th DCA 2001)......................................37

*Atkin v. Tittle & Tittle*, 730 So. 2d 376 (Fla. 3d DCA 1999)...................................29

*Bank S. Leasing, Inc. v. Williams*, 778 F.2d 704 (11th Cir. 1985) ............. 31, 32, 38

*Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913 (11th Cir. 1999).........................39

*Bell Atlantic Corp. v. Twombly¸* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)..........................................................................................40

*Bethell v. Peace*, 441 F.2d 495 (5th Cir. 1971) .......................................................19

*Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999 (Fla. 1980).............................22

*Blue Cross & Blue Shield of Ala., Inc. v. Nielsen*, 116 F.3d 1406 (11th Cir. 1997)......................................................................................................30

*Chandris, S.A. v. Yanakakis*, 668 So. 2d 180 (Fla. 1995) .......................................43

*Collins v. Collins*, 36 So. 2d 417 (Fla. 1948)..........................................................19

*Commodores Entm't Corp. v. McClary*, 879 F.3d 1114 (11th Cir. 2018)................38

*Davis v. Alaska*, 415 U.S. 308, 94 S.Ct.1105, 39 L.Ed.2d 347 (1974) ....................33

*Davis v. Wakelee,* 156 U.S. 680, 15 S.Ct. 555, 39 L.Ed. 578 (1895).......................19

*Deb-Jo Constr. v. Westphal*, 210 A.D.2d 951 (App. Div. 4th Dept. 1994) .............25

*Enwonwu v. Fulton-Dekalb Hosp. Auth.*, 286 Fed. Appx. 586 (11th Cir. 2008) ....................................................................................................................41

*Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)............21

*Evans v. McDonald*, 313 Fed. Appx. 256 (11th Cir. 2009)............................... 27, 28

*Fernandes v. Barrs*, 641 So. 2d 1371 (Fla. 1st DCA 1994).........................11, 43, 45

*Fid. Interior Const., Inc. v. Se. Carpenters Reg'l Council of United Broth. of Carpenters & Joiners of Am.,* 675 F.3d 1250 (11th Cir. 2012)........................15

*Figueroa v. Szymoniak,* No. 13-61020-CIV, 2013 WL 4496512 (S.D. Fla. Aug. 22, 2013) ...............................................................................................24

*Galloway v. U.S.*, 319 U.S. 372, 63 S.Ct.1077, 87 L.Ed. 1458 (1943)....................45

*Goldfarb v. Va. State Bar*, 421 U.S. 773 (1975) .....................................................24

*Gooding v. University Hosp. Building, Inc.,* 445 So. 2d 1015 (Fla. 1984)....... 27, 28

*Goulah v. Ford Motor Co.*, 118 F.3d 1478 (11th Cir. 1997) ...................................32

*Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233 (11th Cir. 2007)...........................................................................................22

*Hanover Fire Insurance Co. v. Sides,* 320 F.2d 437 (5th Cir.1963) ........................31

*Harris v. Am. Postal Workers Union,* 198 F.3d 245 (6th Cir. 1999)........................43

*Herssein Law Group v. Reed Elsevier, Inc.*, 594 Fed.Appx. 606 (11th Cir. 2015)..........................................................................................................42

*Hibiscus Associates Ltd. v. Bd. of Trustees of Policemen & Firemen Ret. Sys. of City of Detroit*, 50 F.3d 908 (11th Cir. 1995)..........................................16

*Jaye v. Royal Saxon*, 687 So. 2d 978 (Fla. 4th DCA 1997).....................................37

*JBJ Inv. of S. Florida, Inc. v. S. Title Group, Inc.*, 251 So. 3d 173 (Fla. 4th DCA 2018)...................................................................................................28

*Kartikes v. Demos*, 214 So. 2d 86 (Fla. 3d DCA 1968)................................... 40, 42

*Kaye v. Pawnee Construction Co.,* 680 F.2d 1360 (11th Cir.1982).........................46

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)..........................................................................................21

*Law Office of David J. Stern, P.A. v. Sec. Nat'l Servicing Corp.,* 969 So. 2d 962 (Fla. 2007) ........................................................................... 26, 28

*Lipphardt v. Durango Steakhouse of Brandon, Inc.,* 267 F.3d 1183 (11th Cir. 2001)...........................................................................................................36

*Lory v. Parsoff*, 296 A.D.2d 535 (App. Div. 2d Dept. 2002)...................................25

*Love v. Acting Sec'y, Dep't of Homeland Sec.*, No. 23-11089, 2023 WL 7272316 (11th Cir. Nov. 3, 2023)...........................................................28

*Maillard v. Dowdell*, 528 So. 2d 512 (Fla. 3d DCA 1988)......................................29

*Maryland Casualty Co. v. Price*, 231 F. 397 (4th Cir. 1916)..................................27

*McDow v. Dixon,* 226 S.E.2d 145 (Ga. Ct. App. 1976) ..........................................43

*Nebula Glass Intern., Inc. v. Reichhold, Inc.*, 454 F.3d 1203 (11th Cir. 2006) ..........................................21

*Pendergast v. Sprint Nextel Corp.,* 592 F.3d 1119 (11th Cir. 2010) ........................25

*Pesaplastic, C.A. v. Cincinnati Milacron Co.,* 750 F.2d 1516 (11th Cir. 1985) .......................................... 31, 32

*Pitcher v. Zappitell,* 160 So. 3d 145 (Fla. 4th DCA 2015) .....................................28

*Practical Offset, Inc. v. Davis*, 404 N.E.2d 516 (Ill. 1980) ....................................25

*Pressley v. Farley*, 579 So. 2d 160 (Fla. 1st DCA 1991)...................... 27, 33, 34, 35

*Provau v. State Farm Mut. Auto. Ins. Co.,* 772 F.2d 817 (11th Cir. 1985) .............25

*Putman v. Erie City Mfg. Co.*, 338 F.2d 911 (5th Cir.1964) ...................................25

*Rich v. Med-National Inc.*, 134 F.3d 383 (10th Cir. 1998) ......................................38

*Roberts & Schaefer Co. v. Hardaway Co.*, 152 F.3d 1283 (11th Cir. 1998)31, 35, 37

*Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259 (11th Cir. 2008) ...............34

*SE Prop. Holdings, LLC v. Welch*, 65 F.4th 1335 (11th Cir. 2023)..........................24

*Sec. Nat'l Servicing Corp. v. Law Office of David J. Stern, P.A.,* 916 So. 2d 934 (Fla. 4th DCA 2005) ..........................................26

*Shannon v. Bellsouth Telecomms., Inc.,* 292 F.3d 712 (11th Cir. 2002) ........... 36, 41

*Solomon v. Meyer*, 116 So. 2d 37 (Fla. 3d DCA 1959)...........................................41

*Steger v. Gen. Elec. Co.*, 318 F.3d 1066 (11th Cir. 2003)....................................29

*Stone v. Wall*, 135 F.3d 1438 (11th Cir. 1998) ......................................................19

*Strochak v. Federal Ins. Co.*, 109 F.3d 717 (11th Cir. 1997) ...................................15

*Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197 (11th Cir. 2018)............................................................................ 19, 20

*Thomas v. Bryant*, 614 F.3d 1288 (11th Cir. 2010)................................................15

*Turner v. Wells*, 879 F.3d 1254 (11th Cir. 2018) ............................................. 24, 25

*United States v. Lindstrom*, 698 F.2d 1154 (11th Cir. 1983)...................................33

*United States v. Prather*, 205 F.3d 1265 (11th Cir. 2000).......................................15

*United States v. Stevens*, 994 So. 2d 1062 (Fla. 2008) ...........................................40

*United States v. Webb*, 655 F.3d 1238 (11th Cir. 2011) ..........................................15

*Vargas v. Schmeitzer-Ramras*, 878 So. 2d 415 (Fla. 3d DCA 2004) .......................37

*Weekley v. Knight*, 156 So. 625 (Fla. 1934) ..................................................... 40, 42

*Weiner v. Moreno*, 271 So. 2d 217 (Fla. 3d DCA 1973) .................................. 27, 28

*White v. ARCO/Polymers, Inc.*, 720 F.2d 1391 (5th Cir. 1983) ..............................20

*Willage v. Law Offices of Wallace & Breslow, P.A.*, 415 So. 2d 767 (Fla. 3d DCA 1982).........................................................................................27

*Williams v. Dresser Indus., Inc.*, 120 F.3d 1163 (11th Cir. 1997).................... 31, 39

**Other Authorities**

Restatement (Second) of Conflict of Laws § 145 ....................................................22

**Rules**

Fed. R. Civ. P. 50 ............................................................................... passim

Fed. R. Civ. P. 8 .......................................................................................41

Florida Bar Rule 4.16 .............................................................................. 13, 32

R. Regulating the Fla. Bar 4-1.2 ...........................................................................34

## STATEMENT OF THE ISSUES

**Issue I** – This issue addresses conflict of law analysis in a diversity case brought in Florida. First, this Court must decide whether Oasis waived any challenge to the applicability of Florida law. Second, and assuming the Court considers this argument, the issue is whether Florida has the most significant relationship with the parties and underlying events.

**Issue II –** This issue addresses whether the trial court abused its discretion in denying requested jury instructions by Oasis.

**Issue III –** This issue addresses whether the District Court correctly granted two judgments as a matter of law in favor of Appellees, including: 1) on Oasis' breach of contract claims against Appellees; and 2) limiting the scope of damages available for the Generex transactions.

## STATEMENT OF THE CASE AND FACTS

This case involves claims of legal malpractice that were resolved by a jury in favor of the defendants – Appellees, Nason, Yeager, Gerson, Harris & Fumero, P.A. and Brian S. Bernstein, Esq. (DE. 21, p.1); (DE. 243). The District Court's jurisdiction was premised in diversity: Appellant, Oasis Capital, LLC, is organized in Puerto Rico with its only member, Adam Long, being domiciled in Puerto Rico; and Bernstein, a Florida lawyer, and his employer, Nason Yeager, a Florida law firm, were both located in Florida. (DE. 23, p. 1, 3-11).

### I. The Parties' Relationship, Events Leading to Litigation, and Allegations Brought Against Appellees

In May 2020, Appellees represented Oasis involving a "secured investment transaction" but "no engagement letter or retainer agreement was ever issued." (DE. 23, pp. 11-12). Pertinent to the underlying litigation, Oasis engaged Appellees for legal representation in connection to several corporate transactions from November 2020 through at least July of 2021: an equity line of credit transaction with Molecular Data Inc. ("MKD"); two secured loan transactions[1] with Generex Biotechnology

[1] In February 2021, Oasis entered into a securities purchase agreement with Generex, and a related convertible promissory note for $1,689,500 with an 8% interest rate (the "February Note"). (DE. 23-5; DE. 137, ¶ 7; DE. 217, p. 5; DE. 248-2). Then, in July 2021, Oasis entered into a second securities purchase agreement with Generex, and a related convertible promissory note for $1,085,000 with an 8% interest rate (the "July Note"). (DE. 137, ¶¶ 9-10; DE. 217, p. 6; DE. 248-9).

Corporation ("Generex"); and a secured loan transaction with Fact Molecular Data, Inc. ("Fact Inc."). (DE. 23, pp. 12-30).

As it relates to Generex, the company incurred financial troubles that led to Generex "going under" and a receiver being appointed "over Generex and its assets." (DE. 131, ¶¶ 46, 69); (DE. 144, ¶P 46, 69); (DE. 23-8) (receivership petition); (DE. 190, pp. 3-4). "After that, Generex's unsecured creditors . . . separately filed an involuntary petition for bankruptcy on behalf of Generex in the United States Bankruptcy Court for the Southern District of Florida." (DE. 190, p. 4); *see* (DE. 131, ¶ 73); (DE. 144, ¶ 73); (DE. 131-24) (involuntary petition); (DE. 131-20) (declaration of bankruptcy trustee).

Based on the identified transactions, Oasis filed suit against Appellees, alleging claims against both Appellees for legal malpractice (Counts 1 and 2), breach of contract (Counts 3 and 4), and breach of fiduciary duty (Counts 5 and 6). (DE. 23, pp. 30-42).[2] For the MKD transaction, Oasis alleged Appellees were negligent in drafting the equity purchase agreement by misstating the amount of shares Oasis would have received. (DE. 23, ¶ 47); (DE. 190, p. 3). For the Generex transactions, Oasis alleged Appellees failed to: file a UCC-1 financing statement in order to perfect the interests; and obtain consent of Generex's subsidiaries in order to obtain

[2] Oasis also alleged Count 7 for vicarious liability against Nason Yeager for its purported responsibility over the actions of Bernstein, (DE. 23, pp. 43-43), which was withdrawn by agreement of counsel at trial. (DE. 264, pp. 264-65).

a security interests in the property. (DE. 23, ¶¶ 57-79, 92-103); (DE. 190, p. 3). For the Fact Inc. transaction, Oasis also alleged Appellees failed to file a UCC-1 financing statement in order to perfect its security interest. (DE. 23, ¶ 105); (DE. 190, p. 3). Oasis claimed these "failures" caused harm in excess of $11 million. (DE. 23, p. 2).

## II. Application of Florida Law v. New York Law and Conflict of Laws Analysis at Summary Judgment

Subsequently, the parties individually moved for final summary judgment. (DE. 130) (Appellees' Motion for Summary Judgment); (DE. 132) (Oasis' Motion for Summary Judgment).[3] One of the issues raised by Oasis on summary judgment was premised on New York law applying to the Generex transactions – namely that because New York law identifies the failure to file a UCC-1 financing statement as *per se* malpractice, Appellees should be liable automatically for failing to file the financing statement. (DE. 132, pp. 6-11). Additionally, Oasis implored the District Court that if it determined Florida law applied, the Court "must still determine whether Florida courts would apply a per se malpractice rule." (DE. 132, pp. 2, 9).

In contrast, Appellees responded that throughout the course of litigation, Oasis previously represented to the District Court that Florida law would apply. (DE. 140,

[3] The parties also challenged each other experts via cross-*Daubert* motions. (DE. 118) (Appellees' *Daubert* Motion to exclude Hunter Malin); (DE. 133) (Oasis' *Daubert* Motion to exclude Charles Rennert).

pp. 2-5); *see, e.g.* (DE. 28, p. 4); (DE. 17, pp. 1-2); (DE. 25, p. 1); *see generally* (DE. 1) (Complaint); (DE. 23) (Second Amended Complaint); (DE. 17) (Response to Motion to Dismiss); (DE. 25) (Response to Motion to Dismiss); (DE. 43) (Joint Conference Report and Joint Proposed Scheduling Order); (DE. 124) (Oasis' Response to Appellees' *Daubert* Motion). Appellees further noted that Oasis' expert, Huner Malin, was "a Florida licensed attorney who is providing standard of care opinions in this case on behalf of Plaintiff based upon Florida law, not New York substantive law." (DE. 140, p. 4); *see* (DE. 118-5, p. 1) (Malin's Expert Report). Appellees then explained why Florida law should apply when applying the conflict of law analysis for the case which was sitting in diversity and that Florida law would not support a *per se* rule for malpractice. (DE. 140, pp. 5-10).

Addressing the parties' competing summary judgment and *Daubert* motions, the District Court issued an Omnibus Order denying Oasis' summary judgment request "insofar as it seeks to find [Appellees] liable under a per-se legal malpractice rule under New York Law because Florida law applies." (DE. 190, p. 8). First, the District Court noted that "[i]t is at least objectionable that [Oasis] has timely raised a choice-of-law argument in this case . . ." (DE. 190, p. 8). Second, the District Court engaged in a choice of law discussion by applying the "most significant relationship test" to the evidence. (DE. 190, pp. 9-10). In doing so, the Court found all elements pointed to the application of Florida, with "[a]ny connection to New York [being]

too attenuated." (DE. 190, p. 9). The Court acknowledged the February Note and the July Note related to the Generex Transactions were "governed by New York contract law" but "those notes are between [Oasis] and Generex, not [Oasis] and [Appellees]," and was "not persuaded that a contract between [Oasis] and a third party . . . controls the choice-of-law analysis here." (DE. 190, pp. 9-10).

### III. Proposed Pre-Trial Jury Instructions by Oasis Draw Objections by Appellees

Prior to trial, the parties submitted jury instructions which included three proposed instructions by Oasis at issue in this case:

*Proposed Jury Instruction 21 – Lawyer responsible for filing UCC-1 financing statement for secured loan even without instruction.*

> A lawyer is responsible for filing a UCC-1 financing statement to perfect a client's secured loan. A lawyer has this responsibility even if the client did not specifically request that the lawyer file a UCC-1 financing statement.

*Proposed Jury Instruction 22 – Lawyer responsible to communicate with client in writing about the scope of representation.*

> If a lawyer wishes to limit the scope of his representation, he must obtain the "informed consent" of his client in writing. "Informed consent" means the client agreed after the lawyer communicated adequate information and explanation about the risks and reasonably available alternatives to the proposed course of conduct.

*Proposed Jury Instruction 33*

> Ambiguity in the terms of representation is construed against the attorney and in favor of the client. An attorney must be clear and precise in explaining the terms of representation to the client. If

> the terms are unclear, then they are construed against the attorney and in favor of the client.

(DE. 218, pp. 39-40, 53).

Appellees objected to these proposed Jury Instructions. As to proposed Jury Instruction 21, Appellees argued the District Court's Omnibus Order previously determined that Florida law applied, the choice of law analysis that controlled, and that the interest in regulating lawyers would be under the state of Florida. (DE. 218, p. 39); *see* (DE. 190) (Omnibus Order). For proposed Jury Instruction 22, Appellees also objected based on the Omnibus Order Florida law applied, as well as noting the Florida Rules of Professional Conduct do not create a *per se* negligence claim. (DE. 218, p. 40); *see* (DE. 190) (Omnibus Order). Regarding proposed Jury Instruction 33, Appellees objected that this went beyond the scope of the pleadings, and that they did not consent for this issue to be tried. (DE. 218, p. 53).

Additionally, the parties agreed pre-trial to numerous underlying facts. (DE. 217, pp. 5-13). One issue that remained to be litigated was whether Oasis instructed Appellees to file a UCC-1 financing statement related to the February Note, the July Note, and the Facts Inc. Transaction. (DE. 217, pp. 13-14). Other issues included whether Appellees received Oasis' consent to do so, or that it should have filed the document even without consent. (DE. 217, pp. 13-14). Additional disputed positions by Appellees to be tried included whether Oasis' investment with Generex was risky and whether Oasis "employed a strategy of not filing UCC-1 financing statements

after closing on some convertible note transactions." (DE. 217, p. 14). The parties also contested causation and the scope of alleged damages, with Oasis claiming $11 million in damages and Appellees positing that the damages would be limited to $2.75 million based on the Generex bankruptcy order. (DE. 217, pp. 14-15). Oasis also identified the "[c]hoice of law" issue, which was objected to by Appellees because the issue was decided previously in the District Court's Omnibus Order. (DE. 217, p. 18); *see* (DE. 190, pp. 8-12).

## IV. The Case Proceeded to Trial

The case proceeded to trial. At trial, the jury heard conflicting testimony by Long and Bernstein related to the filing or non-filing of the UCC-1 financial statement. (DE. 131-13, ¶¶ 5, 8-9); (DE. 141-1, ¶¶ 9, 11); (DE. 262 pp. 241:5 – 242:14); (DE. 264, p. 24:3-14). The jury also heard conflicting expert testimony from Hunter Malin, Oasis' standard of care expert, and Charles Rennert, Appellees' standard of care expert, regarding whether an attorney has a duty to file a UCC-1 financing statement without authorization or instruction from the client. (DE. 264, pp. 162:17 – 167:4); (DE. 265, pp. 83:23 – 84:16, 86:9-16, 92:13-17).

After Oasis rested, Bernstein moved for judgment as a matter of law on Count 3 for breach of contract since no evidence was presented that a contract existed between Oasis and Bernstein individually. (DE. 264, pp. 236:18 – 237:7). The defense argued that to the extent there was retention, it was between Oasis and Nason

Yeager. (DE. 264, p. 237:1-2). As to Count 4 for breach of contract against Nason Yeager, the defense argued that while there was some evidence of the existence of a retention agreement/engagement letter between Oasis and Nason Yeager, there was no evidence of the specific terms of that contract. (DE. 264, pp. 237:20 – 238:16).

Oasis pointed to Long's testimony that he told Bernstein to file the UCC-1 financing statement and that Bernstein purportedly agreed to do so. (DE. 264, p. 244:12-14). Oasis relied on "general conversations" that occurred between Long and Bernstein after Bernstein was retained. (DE. 264, p. 245:1-5, 13-19). Oasis believed the testimony demonstrated that Long's testimony "support[ed] the existence of that agreement . . . at the time of engagement" and that a breach of contract was demonstrated "[s]ort of [as a] one-off every time the client says to do something . . ." (DE. 264, pp. 245:23 – 246:10).

In response, the defense argued that this was a malpractice case, not a breach of contract case. (DE. 264, p. 251:17-25). Appellees disagreed with the theory by Oasis that "every time a lawyer is given an instruction, that's a separate independent contract. That's not the law." (DE. 264, p. 252:23-25). Appellees argued that Oasis bore the burden to "to prove the existence of a contract. And there is no evidence of material terms of an agreement." (DE. 264, p. 253:18-20).

The District Court granted Appellees' motion for judgment as a matter of law on the contract claims, finding the issue was "ultimately one of nonexistent facts," and explaining:

> There is no evidence of . . . a written contract, and I don't even think the plaintiff is moving under a written contract theoretical, which leaves an oral one only presumably against the firm. And on that issue, there is just simply no evidence from which a reasonable juror could determine what the essential terms of such a contract at the inception of the engagement would have been. And that, I think, is a necessary element of any breach of contract claim, and I'm not equipped or able to just disregard the traditional elements of a breach of contract claim which would require at least some ability to define the essential terms and things that the contract required in this case when the attorney agreed to be employed by the client or when the firm agreed to be employed by the client.
>
> It's plaintiff's burden to prove that. And on the record presented, there is simply nothing to satisfy the reasonable juror standard that such essential terms are discernible from the record. In fact, I don't even know how you'd craft proper jury instructions on the breach of contract action which is another indicator, I think, that there is just insufficient evidence of those terms in the trial record, as proven by plaintiff.
>
> So for that evidentiary reason, I'm going to grant defendant's motion for judgment as a matter of law on Counts 3 and 4, not because there is just no way under Florida law to ever bring these kinds of claims together in one action, but because the proof here submitted by plaintiff is wholly insufficient on the essential terms of what the contract would have been, and hence, no ability to determine whether there was any breach of those unproven essential terms.

(DE. 265, pp. 5:20 – 6:25).

Additionally, Appellees moved for judgment as a matter of law regarding the damages related to the MKD, Generex, and Fact Inc. situations. (DE. 264, pp. 265:16 – 287:14). Specifically, as to Generex transactions, Appellees argued the damages

should be capped at $2,450,000.00 for failing to file the UCC-1 financing statements. (DE. 264, pp. 267:20 – 268:12). This amount was stipulated to by the parties as the amount "Oasis would have gotten had there been a UCC [financing statement], minus what Mr. Long has said he received from the bankruptcy estate for the claim that was unsecured." (DE. 264, p. 268:9-14). The defense argued there was no evidence to show that but for the actions of Appellees, Generex would not have gone into bankruptcy. (DE. 264, pp. 271:8 – 272:1). Appellees acknowledged there were financial statements, but these only showed that Oasis was insolvent when Oasis bore the burden to show solvency. (DE. 264, pp. 272:19 – 273:6). During the discussion with the Court, Oasis referenced *Fernandes v. Barrs*, 641 So. 2d 1371 (Fla. 1st DCA 1994) for the legal requirements. (DE. 264, p. 274:16-25). The District Court had "very, very substantial doubts about the adequacy of proof" for damages, (DE. 265, p. 7:24), but reserved ruling and permitted Appellees to raise the issue after the defense concluded its case. (DE. 265, p. 8:2-7).

After Appellees rested, they renewed their Rule 50(a) motion regarding the "limitation of damages" since there was "zero evidence that there is a basis to conclude that [Generex] would not have gone into bankruptcy." (DE. 265, p. 116:15-16, 116:19-20); *see* (DE. 248-5) (Generex involuntary petition for bankruptcy). The District Court granted Appellees' Rule 50(a) motion regarding limiting damages. (DE. 265, pp. 159:11 – 163:12).

Then, during the final charge conference, Oasis discussed three of its proposed jury instructions: proposed Jury Instruction 21, 22, and 33,[4] along with an additional instruction based on testimony at trial. (DE. 265, pp. 141-44, 154-56). For proposed Jury Instruction 21, the District Court thought this was "a curious instruction because it just gets to one of the contested questions here with dueling experts." (DE. 265, p. 141:15-18). Because of this, the District Court did not allow proposed Jury Instruction 21 to be read. (DE. 265, p. 142:4-7). Appellees did not object to this instruction being removed. (DE. 265, p. 142:9).

For proposed Jury Instruction 22, Appellees voiced its objection since it was "something their expert or some evidence in the case needed to articulate," argumentative and addressed by the District Court's Omnibus Order, (DE. 265, pp. 142:19-21, 143:3-7). Appellees further noted that "a violation of the rule should not give rise to a cause of action." (DE. 265, p. 143:1-3). The District Court agreed, explaining why it would not instruct the jury on proposed Jury Instruction 22:

> We have, of course, the basic default rule that a violation of the rules of professional conduct doesn't create a legal duty on the part of the lawyer nor constitute negligence per se. There is a dispute in this case about the standard of care, vis-á-vis lawyers, and that has been explored by two competing experts. So I don't think it's appropriate to selectively pluck items from the professional rules, either this one or the other one you mentioned before we took the break.

(DE. 265, p. 144:1-9).

---

[4] These instructions were submitted by the parties pre-trial. (DE. 218, p. 1).

Next, for proposed Jury Instruction 33[5], Oasis argued the instruction was still relevant despite the dismissal of the contract claims because of the disputed scope of Appellees' legal representation. (DE. 265, p. 154:23 – 155:7). Oasis explained the instruction was premised on Florida Bar Rule 4-1.6. (DE. 265, p. 156:8-13). Appellees objected that it would confuse the jury since the contract claim was not being submitted to the jury and the proposed instruction was argumentative. (DE. 265, p. 155:9-20). The District Court agreed that the proposed instruction would confuse the jury "in light of the absence of a breach of contract claim" because "it wouldn't be tied in any reasonable way to any claims." (DE. 265, p. 155:21-24).

Lastly, based on a disagreement with a portion of Rennert's testimony about the scope of authorization required by the Florida Bar and believing the testimony was incorrect, Oasis requested the Court to instruct the jury on Florida Bar Rule 4.16(c)(1) as follows:

> A lawyer may reveal confidential information, to the extent the lawyer reasonably believes necessary to serve the client's interests, unless it is information the client specifically requires not to be disclosed.

(DE. 265, pp. 110:16 – 111:15, 156:8-13). Appellees objected that the instruction inappropriately served as argument, and "[t]he appropriate mechanism that counsel

---

[5] The District Court and the parties referenced this as the proposed jury instruction on page 53 of the parties' pre-trial instructions. (DE. 265, p. 154:15-18); *see* (DE. 218, p. 53).

could have used is to try to cross-examine him with this particular rule or their view on the law during [Rennert's] examination, not by way of a jury instruction that Your Honor gives which would highlight their argument." (DE. 265, p. 111:21-25).

The Court denied this request for two reasons: "Number 1, the ruled don't create the presumption of negligence. And number 2, this is the heart of the case." (DE. 265, p. 156:14-17). The District Court also discussed how the instruction may have been more appropriate for Oasis to address with its expert:

> I don't know why you wouldn't have crossed the witness on that subject. And if this rule were so important to you, then it should have been raised with your duty of care expert. So to try to do this backdoor through an instruction, when you didn't even take advantage of this issue in the examination of the witness is curious, and so that's another reason.

(DE. 265, p. 156:17-23).

The Final Instructions included, among others, instructions related to the consideration of evidence, credibility of witnesses, impeachment, expert witnesses, and Oasis' burden to prove all elements of individual claims by a preponderance of evidence in order for the jury to return a verdict in its favor. (DE. 240, pp. 3-9).

Ultimately, the jury returned a verdict in favor of Appellees, finding Oasis did not demonstrate by a preponderance of the evidence that Appellees committed professional negligence or breached a fiduciary duty. (DE. 243). Final judgment was entered in favor of Appellees, (DE. 245), and this appeal follows. (DE. 256).

## STANDARD OF REVIEW

### I. Review of Conflict of Laws

This Court utilizes a *de novo* review for district court rulings on conflicts of law. *Strochak v. Federal Ins. Co.*, 109 F.3d 717, 719 (11th Cir. 1997). Legal conclusions also are reviewed *de novo*. *Thomas v. Bryant*, 614 F.3d 1288, 1307 (11th Cir. 2010).

### II. Review of Jury Instructions

This Court reviews "the legal correctness of a jury instruction *de novo,* but defer on questions of phrasing absent an abuse of discretion." *Fid. Interior Const., Inc. v. Se. Carpenters Reg'l Council of United Broth. of Carpenters & Joiners of Am.,* 675 F.3d 1250, 1259 (11th Cir. 2012) (quoting *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000)). Indeed, district courts enjoy "broad discretion in formulating jury instructions as long as those instructions are a correct statement of the law" and this Court will reverse the lower court's refusal to instruction the jury as requested "only if the proffered instruction was substantially correct, the requested instruction was not addressed in the charges actually given, and failure to give the instruction seriously impaired the defendant's ability to present an effective defense." *United States v. Webb*, 655 F.3d 1238, 1249 n. 8 (11th Cir. 2011). (internal quotation marks omitted). Further analysis occurs as "[j]ury instructions are subject to harmless error review." *Id.*

## III. Review of Rule 50(a) Judgment as a Matter of Law

A district court's ruling on a motion for judgment as a matter of law is reviewed *de novo*. *Hibiscus Associates Ltd. v. Bd. of Trustees of Policemen & Firemen Ret. Sys. of City of Detroit*, 50 F.3d 908, 920 (11th Cir. 1995). In conducting this analysis, this Court reviews the granting of such a motion like the district court, assessing the sufficiency evidence and "evaluating all of the evidence, together with logical inferences, in the light most favorable to the party opposing the motion." *Adams v. Bainbridge-Decatur Cnty. Hosp. Auth.*, 888 F.2d 1356, 1363 (11th Cir. 1989).

## SUMMARY OF THE ARGUMENT

This Court should affirm the Final Judgment entered in favor of Appellees. While Oasis argues several issues on appeal, none of the arguments presented demonstrate grounds for reversal.

**Issue I.** It is undisputed that Florida law, as the law forum state for the underlying litigation in a diversity case, should apply. Even if Oasis desired to challenge this, it waived its ability to do so by failing to argue the application of New York law, or any other state's law, in its complaint or first motion. Instead, Oasis relied on Florida law until the summary judgment stage where it first challenged its applicability. Should this Court consider Oasis' argument on appeal, Florida's most significant relationship test shows the injury occurred in Florida, the conduct by Appellees occurred in Florida, Bernstein resided in Florida, Nason Yeager was incorporated in Florida, and the relationship between the parties was centered in Florida.

**Issue II.** The District Court correctly refused to allow Oasis to read three proposed jury instructions. Oasis cannot rely on Florida's Rules Regulating the Florida Bar for proposed jury instructions since such rules do not allow for causes of actions or a basis for civil liability. To the extent Oasis request a jury instruction on revealing client confidences based on testimony of one of Appellees' experts, this was not addressed by Oasis on cross-examination of that expert. It is not the purpose

of jury instruction to correct errors in examination. Lastly, the District Court properly prohibited a jury instruction on ambiguity contracts since Oasis' contract claims were resolved on Appellees' Rule 50(a) motion.

**Issue III.** The District Court correctly granted judgment as a matter of law on two grounds. First, Oasis' contract claims against Appellees. No evidence was presented as to the terms of a contract that Oasis admitted was not in writing. Failure to present evidence on the terms of a contract precludes proof of breach of these unidentified, unknown provisions. Second, damages related to the Generex transactions. Oasis failed to present evidence of collectability. Rather, the evidence demonstrated that Generex, through its involuntary petition of bankruptcy and expert testimony, was not solvent. No evidence was presented that Generex would not have gone into bankruptcy but for Appellees' action. Speculation or the existence of a scintilla of evidence is not sufficient to allow an issue to be submitted to a jury. Therefore, this Court should affirm.

# ARGUMENT

## I. Oasis' Challenge to The Application of Florida Law in This Diversity Case Is Not Before This Court; Even If Considered, Florida Law Prevails Under the Most Significant Relationship Test.

### A. Oasis Waived Its Position That New York Law Should Apply by Failing to Raise Its Choice of Law in Its Pleadings.

"Foreign law is a fact to be pleaded and proved; and when the contrary is not alleged, the law of the sister state will be assumed to be the same as Florida law." *Stone v. Wall*, 135 F.3d 1438, 1442 (11th Cir. 1998) (citing *Collins v. Collins*, 36 So. 2d 417, 417 (Fla. 1948)). "[A] party waives it opportunity to rely on non-forum law when it fails to timely provide – typically in its compliant or the first motion or response when choice-of-law matters – the sources of non-forum law on which it seeks to rely." *Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1208 (11th Cir. 2018); *see Bethell v. Peace*, 441 F.2d 495, 497 (5th Cir. 1971) (explaining that failing to plead or prove foreign law, a district court is "entitled to assume that [foreign law] was the same as Florida law"). Furthermore, "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895).

When Oasis instituted the underlying litigation against Appellees, it did not plead New York law, much less suggest its application. Instead, the original Complaint discussed Appellees' connections to Florida, that they specialized in areas "in the State of Florida," and were "required under Florida law to perform legal services . . . in the State of Florida." (DE. 1, pp. 2-3, 25, 29). Amendments to the complaint followed that same trajectory, failing to plead or prove the reliance on and application of New York law to Oasis' claims. (DE. 21, pp. 2-4, 26, 30) (Amended Complaint); (DE. 23, pp. 3-11, 33, 37) (Second Amended Complaint). These assertions are "considered to be judicial admissions conclusively binding on the party who made them," in this instance, Oasis. *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983).

At no point did Oasis plead New York law, or non-forum law, in its pleadings. *See Sun Life*, 904 F.3d at 1209 (finding "Sun Life waived its opportunity to rely on non-forum law" and interpreted issues under Florida law). On the contrary, leading up to its Motion for Summary Judgment, Oasis presented legal arguments under Florida law. *See* (DE. 28, p. 4) (Supplemental Brief on Ripeness); (DE. 17, pp. 1-2) (Response to Motion to Dismiss Complaint); (DE. 25, p. 1) (Response to Motion to Dismiss Amended Complaint); *see also Davis,* 156 U.S. at 689.

Oasis' failure to plead or prove the application of New York law prior to its Motion for Summary Judgment constitutes a waiver of this position. *See Sun Life*,

904 F.3d at 1208. Indeed, relying on the Florida law to bring allegations and present arguments to the District Court cannot be overlooked, and the prior reliance on Florida law cannot be undone merely by moving for summary judgment. Therefore, this issue was waived.

B. Even If Considered by This Court, Florida Law Applies Because Florida Has the Most Significant Relationship with The Parties and The Underlying Events.

Diversity actions require federal courts to apply conflict-of-law principles from the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *see Nebula Glass Intern., Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1212 (11th Cir. 2006) ("We are *Erie*-bound by Florida law in deciding this diversity case . . ."). Here, Oasis filed the underlying litigation against Appellees in the United States District Court for the Southern District of Florida based on diversity. (DE. 23, pp. 1-11). Oasis alleged venue was appropriate in the Southern District of Florida "because a substantial part of the underlying events at issue herein took place principally in Palm Beach Gardens, Florida, where the professional legal services at issue were rendered." (DE. 23, p. 11).

With Florida unquestionably being the forum state, the conflict-of-law analysis under Florida law is resolved by applying the "'most significant relationship' test outlined in the Restatement (Second) of Conflict of Laws." *Grupo*

*Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007) (citing *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980)). Under this analysis, four contacts are considered:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145(2) (1971); *see Grupo Televisa*, 485 F.3d at 1240; *Bishop*, 389 So. 2d at 1001. "These contacts are to be evaluated according to their relative importance with respect to the particular issue." Restatement (Second) of Conflict of Laws § 145(2); *see Grupo Televisa*, 485 F.3d at 1240; *Bishop*, 389 So. 2d at 1001. Additional policy considerations further assist in determining choice of law. *See* Restatement (Second) of Conflict of Laws § 145(6); *Bishop*, 389 So. 2d at 1001.

Looking at the facts of this case with the choice of law confirms that Florida law, as the forum of the litigation, was appropriate. Bernstein, a Florida lawyer, was employed by Nason Yeager, a Florida professional association incorporated in the state of Florida with its principal place of business in Florida. (DE. 23, pp. 1, 3-11); (DE. 131, ¶ 33); (DE. 137, ¶ 5). Oasis even alleged that the locale where "the professional legal services at issue were rendered" occurred in Florida. (DE. 23, p. 11). In addition to Bernstein's domicile, the place of incorporation of Nason Yeager,

and the place where the conduct and alleged wrongdoing occurred, the petition for involuntary bankruptcy regarding Generex was filed in the United States Bankruptcy Court for the Southern District of Florida. (DE. 131-24). In other words, the factors of Florida's "most significant relationship test" when applied to the facts showcase that there is no location other than Florida that would support a choice of law in favor of the forum state.

To be sure, the record does not contain any document that would demonstrate a choice that the laws of the state of New York would apply to this dispute. There was no written retainer agreement. (DE. 140, p. 6). Even though the February Note and the July Note state that they are subject to New York contract law, these convertible promissory notes were between Oasis and Generex, *not* Oasis and Appellees. (DE. 140, p. 6); *see* (DE. 23-5, pp. 2, 11) (February Note); (DE. 23-6, pp. 2, 11) (July Note). Moreover, the convertible promissory notes do not mention that New York law should apply in a legal malpractice case, much less one between Oasis and Appellees. *See generally* (DE. 23-5) (February Note); (DE. 23-6) (July Note). Indeed, Oasis' claims set forth in the Second Amended Complaint, and any proceeding complaint, did not assert allegations under New York or that any action occurred by Appellees in New York.

All facts and policy considerations point to applying Florida law. This makes sense since states enjoy the independent interest of addressing the conduct of

attorneys practicing within their respective jurisdictions. (DE. 190, p. 9) (citing *Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975) ("The interest of the State in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been officers of the courts.") (internal quotations omitted); *see Figueroa v. Szymoniak,* No. 13-61020-CIV, 2013 WL 4496512, at *4 (S.D. Fla. Aug. 22, 2013) ("The State of Florida has a strong interest in addressing such alleged behavior by attorneys practicing in Florida or representing clients in this state."). Therefore, the "most significant relationship" test and its policy considerations favor Florida law as applied.

C. With Florida Law Firmly Established, The Need to Consider Authorities from Other States Is Unnecessary.

Since this case involves interpreting Florida substantive law, this Court "look[s] first for case precedent from Florida's highest court—the Florida Supreme Court." *SE Prop. Holdings, LLC v. Welch*, 65 F.4th 1335, 1342 (11th Cir. 2023). When the Florida Supreme Court has not addressed an issue, this Court "must predict how the highest court would decide this case." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018). Guidance for this task can come from Florida's intermediate appellate courts, the District Courts of Appeal, which this Court "is bound to adhere to . . . absent some persuasive indication that the state's highest court would decide the issue otherwise." *Provau v. State Farm Mut. Auto. Ins. Co.,* 772 F.2d 817, 820

(11th Cir. 1985). In doing so, "all other data may be considered to the extent they indicate how the Florida Supreme Court might rule on an issue." *Pendergast v. Sprint Nextel Corp.,* 592 F.3d 1119, 1133 (11th Cir. 2010); *see Putman v. Erie City Mfg. Co.*, 338 F.2d 911, 917 (5th Cir.1964) ("The Court is forced, therefore, to look to all available data; for example, to such sources as the Restatements of Law, treatises and law review commentary, and the majority rule, keeping in mind that it must choose the rule which it believes the state court, from all that is known about its methods of reaching decisions[,] is likely in the future to adopt.") (internal quotations omitted).

Even though Florida substantive law applies, Oasis submits that laws of other states – Georgia, Illinois, and New York – should be considered. (IB. 22-26, 28-30) (discussing laws requiring a UCC-1 financing statement to be filed). Specifically, Oasis points to the *per se* rule established in these non-forum jurisdictions for malpractice claims when a transaction attorney does not file a UCC-1 financing statement. *See Lory v. Parsoff*, 296 A.D.2d 535, 536 (App. Div. 2d Dept. 2002) ("An attorney's failure to file a UCC financing statement in the manner necessary to perfect his client's security interest constitutes malpractice as a matter of law. . ."); *Deb-Jo Constr. v. Westphal*, 210 A.D.2d 951, 951 (App. Div. 4th Dept. 1994) (same); *Barnes v. Turner*, 606 S.E.2d 849, 851-52 (Ga. 2004); *Practical Offset, Inc. v. Davis*, 404 N.E.2d 516, 574-75 (Ill. 1980).

Oasis candidly acknowledges that Florida courts "have not specifically addressed a duty to file a UCC-1" financing statement. (IB. 26); *see* (DE. 123, pp. 9-11); (DE. 175, pp. 6-7). The District Court also commented on this dearth of authority. (DE. 190, p. 10) ("[Oasis] has provided no authority from the Florida Supreme Court or Florida's intermediary appellate courts suggesting that the Florida Supreme Court would adopt a per se malpractice rule."); *see* (DE. 140, pp. 8-9) (Appellees' Response to Oasis' Motion for Summary Judgment).

However, the Florida Supreme Court has spoken to the *opposite* of Oasis' offered out-of-state authorities by identifying the elements required for a professional malpractice claim against an attorney: "A legal malpractice action has three elements: 1) the attorney's employment; 2) the attorney's neglect of a reasonable duty; and 3) the attorney's negligence as the proximate cause of loss to the client." *Law Office of David J. Stern, P.A. v. Sec. Nat'l Servicing Corp.,* 969 So. 2d 962, 966 (Fla. 2007) (quoting *Sec. Nat'l Servicing Corp. v. Law Office of David J. Stern, P.A.,* 916 So. 2d 934, 936–37 (Fla. 4th DCA 2005)). This adheres to long standing Florida law that "to recover on a negligence claim a plaintiff must prove a duty owed to plaintiff from defendant, a breach of that duty and an injury to plaintiff that was proximately caused by the breach. This basic legal premise is carried over unto an action against an attorney for legal malpractice." *Weiner v. Moreno*, 271 So.

2d 217, 219 (Fla. 3d DCA 1973) (adopting *Maryland Casualty Co. v. Price*, 231 F. 397 (4th Cir. 1916)).

Having previously analyzed Florida law for this issue, this Court explained its findings:

> Florida case law indicates that a legal malpractice plaintiff must present expert testimony to establish the appropriate standard of care (and breach thereof) unless the lawyer's lack of care and skill is so obvious that the trier of fact can resolve the issue as a matter of common knowledge . . . . But when the facts of the case are such that the duty owed and the applicable standard of care are not common knowledge, expert opinion is necessary to establish a breach.

*Evans v. McDonald*, 313 Fed. Appx. 256, 258 (11th Cir. 2009) (citing *Willage v. Law Offices of Wallace & Breslow, P. A.*, 415 So. 2d 767, 768 (Fla. 3d DCA 1982)). Additionally, for the element of causation, Florida "follow[s] the more likely than not standard of causation and require proof that the negligence probably caused the plaintiff's injury." *Gooding v. University Hosp. Building, Inc.,* 445 So. 2d 1015, 1018 (Fla. 1984).

Not only would a *per se* rule be impermissible in Florida based on Florida Supreme Court precedent, but also intermediate appellate courts have continued to acknowledge that "[a] violation of the [Florida] Rules of Professional Conduct . . . does not create a legal duty on the part of the lawyer nor constitute negligence per se, although it may be used as some evidence of negligence." *Pressley v. Farley*, 579 So. 2d 160, 161 (Fla. 1st DCA 1991); *see Pitcher v. Zappitell,* 160 So. 3d 145, 148

(Fla. 4th DCA 2015) (same). Whether other states have similar principles is of no moment as Florida substantive law applies, which does not permit a finding of legal malpractice as a matter of law. *See Evans*, 313 Fed. Appx. at 258; *Law Office of David J. Stern,* 969 So. 2d at 966; *Gooding,* 445 So. 2d at 1018; *Weiner*, 271 So. 2d at 219; *see also* (IB. 28-29).

Similarly, Oasis' argument that an attorney "cannot disregard matters that signify potential legal problems" must fail. (IB. 26-28). It is not clear that this specific argument was presented to the District Court. *See Love v. Acting Sec'y, Dep't of Homeland Sec.*, No. 23-11089, 2023 WL 7272316, at *1 (11th Cir. Nov. 3, 2023) ("Generally, we do not consider arguments raised for the first time on appeal in a civil case."). Still, Oasis presents this position under Florida law. (IB. 26-28). This acts as a tacit concession that Florida law, as the forum state in this diversity case, should apply over that of any other state. *See supra* Issue I.B.

Nonetheless, even considering these Florida authorities, Oasis does not demonstrate why the factually different occurrence of a real estate transaction should apply to the filing of UCC-1 financing statement. *See JBJ Inv. of S. Florida, Inc. v. S. Title Group, Inc.*, 251 So. 3d 173, 179 (Fla. 4th DCA 2018) ("An attorney may *not* disregard matters that arise and reasonably signal potential legal problems, even if those matters do not fall precisely within the general rule governing the scope of an attorney's duties when representing a client in **a real estate transaction**.")

(emphasis added) (internal quotation omitted); *Atkin v. Tittle & Tittle*, 730 So. 2d 376, 378 (Fla. 3d DCA 1999) ("Although *Maillard* provides the general rule as to an attorney's duties when representing a client in a real estate transaction, that rule is not absolute. An attorney may *not* disregard matters that arise and reasonably signal potential legal problems although those matters may not fall precisely within the general rule."); *Maillard v. Dowdell*, 528 So. 2d 512, 515 (Fla. 3d DCA 1988) (affirming dismissal of complaint with prejudice since "plaintiffs did not claim Dowdell completely disregarded matters coming to his attention which should reasonably have put him on notice that plaintiffs would have legal problems that were not precisely or totally within the scope of the task Dowdell was employed to perform").

Even considering *Maillard*, Oasis' Second Amended Complaint does not contain allegations of potential legal problems that should have come to Appellees' attention that would put Appellees on notice. *See Maillard*, 528 So. 2d at 515; *see generally* (DE. 23). This position also was not raised in the parties' Joint Pretrial Stipulation. (DE. 217, pp. 18-19) (Joint Pretrial Stipulation identifying Oasis' issues to be tried); *see Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077 (11th Cir. 2003) ("[I]ssues not raised in the pleadings may be treated as if they were properly raised when they are tried by express or implied consent of the parties, . . . or are included in a pretrial order.") (internal quotation and citation omitted). Contrary to Oasis'

suggestion, this argument is not a "general rule" of Florida law, but one that by Oasis' own argument is cabined in real estate transactions.

Even considering these authorities, they further enforce that Florida courts do not support a *per se* rule, that issues of professional conduct are only evidence of negligence, and that conflicting evidence is best left to be determined by a jury. The evidentiary and burden requirements placed on a plaintiff demonstrate that a *per se* rule for malpractice does not exist under Florida law and that the Florida Supreme Court, or any of the intermediate District Courts of Appeal, would not make such a ruling. The District Court correctly "decline[d] to commandeer Florida law on this issue and adopt such a rule for an attorney's failure to file a UCC-1 financing statement." (DE. 190, p. 11).

D. Certification to the Florida Supreme Court is Unnecessary Based on Settled Florida Law.

Appellees acknowledge that, were there is question of Florida law, this Court, in compliance with "[p]rinciples of comity and federalism" will certify an issue to the Florida Supreme Court "[b]ecause [it is] the only authoritative voice on [Florida] law" and 'it is axiomatic that that court is the best one to decide issues of [Florida] law." *Blue Cross & Blue Shield of Ala., Inc. v. Nielsen*, 116 F.3d 1406, 1413 (11th Cir. 1997). However, there is no need to certify a question where, as here, Florida law is clear on the analysis of conflict of laws in a diversity action, as well as the elements and application of the significant relationship test. *See supra* Issue I.B. This

further assumes that this Court can decide the issue. *See supra* Issue. I.A. Because certification is unnecessary, this Court should affirm the District Court's ruling and application of Florida law to Oasis' claims.

## II. The Trial Court Acted Within Its Discretion to Deny Oasis' Proposed Jury Instructions.

District courts are afforded great deference when instructing a jury. *Roberts & Schaefer Co. v. Hardaway Co.*, 152 F.3d 1283, 1295 (11th Cir. 1998). This Court will depart from that deference and "find reversible error in the refusal to give a requested instruction only if (1) the requested instruction correctly stated the law, (2) the instruction dealt with an issue properly before the jury, and (3) the failure to give the instruction resulted in prejudicial harm to the requesting party." *Id.* This furthers the purpose of instructing a jury, to provide it with "a clear and concise statement of the law applicable to the facts of the case." *Pesaplastic, C.A. v. Cincinnati Milacron Co.,* 750 F.2d 1516, 1525 (11th Cir. 1985) (quoting *Hanover Fire Insurance Co. v. Sides,* 320 F.2d 437, 444 (5th Cir.1963)). However, a jury is to "be instructed on a legal theory only if the evidence adduced at trial is sufficient to justify the instruction." *Bank S. Leasing, Inc. v. Williams*, 778 F.2d 704, 706 (11th Cir. 1985).

Here, the District's Court's refusal to provide Oasis' proposed jury instructions was correct. As acknowledged by Oasis, this Court can still affirm regardless of whether "the substance of the proposed instruction was covered by another instruction . . . given." *Goulah v. Ford Motor Co.*, 118 F.3d 1478, 1485 (11th

Cir. 1997); (IB. 39). If the substance of Oasis' proposed Jury Instructions 22 and 33 was not addressed in other jury instructions provided, then this Court undertakes the analysis of whether the proposed instruction correctly state the law, whether the issue was properly before the jury, and whether the refusal led to prejudicial harm to Oasis. *See Pesaplastic*, 750 F.2d at 1525. This case travels under these principles since the substance of the rejected jury instructions were not included in other instructions.

A. Oasis' Proposed Jury Instruction at Trial Regarding an Attorney Revealing Client Confidences was a Topic for Expert Cross-Examination, Not Supported by Evidence, and Not Before the Jury.

On appeal, Oasis argues that its requested jury instruction that an attorney can reveal a client's confidences should have been read to the jury to correct the defense expert's statement. (IB. 35). Specifically, Oasis disagreed with testimony by Rennert, Appellees' expert, about the scope of authorization required by the Florida Bar. (DE. 265, p. 110:16-22). Believing Rennert's testimony was incorrect, Oasis requested the Court to instruct the jury on Florida Bar Rule 4.16(c)(1) regarding when a lawyer may reveal a client's confidential information. (DE. 265, pp. 110:16 – 111:15, 156:8-13). This was properly rejected by the District Court.

Jury instructions are not meant to correct testimony. *See Pesaplastic,* 750 F.2d at 1525. Neither should a jury instruction be permitted where, as here, Oasis did not elicit any testimony or provide any evidence that would require the requested instruction. *See Bank S. Leasing*, 778 F.2d at 706. Any attempt to cast doubt on a

witness' testimony or impeach a witness, such as Rennert, should have occurred by Oasis on cross-examination of Rennert. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct.1105, 39 L.Ed.2d 347 (1974) ("Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness."); *United States v. Lindstrom*, 698 F.2d 1154, 1160 (11th Cir. 1983) ("One goal of effective cross-examination is to impeach the credibility of opposing witnesses."). The District Court correctly denied this request, explaining that it was improper for Oasis to "backdoor [this] through an instruction, when you didn't even take advantage of this issue in the examination of the witness . . ." (DE. 265, p. 156:20-22).

Additionally, the District Court correctly acknowledged that "violating a bar rule is not per se malpractice, although it can constitute evidence of negligence." (IB. 34) (citing *Pressley v. Farley*, 579 So. 2d 160, 161 (Fla. 1st DCA 1991)); *see* (DE. 265, p. 156:14-17). Oasis notes this on appeal, but argues that "*Pressley* has no application to this instruction." (IB. 34). Even if the District Court unnecessarily but correctly reflected on Florida law that there was no presumption of negligence, as acknowledged by Oasis, this Court still should affirm under the "tipsy coachman

doctrine" based on the prior discussion that Oasis failed to cross-examine Rennert or otherwise present evidence supporting this instruction. *See Applegate v. Barnett Bank of Tallahassee,* 377 So. 2d 1150, 1152 (Fla. 1979) ("The written final judgment by the trial court could well be wrong in its reasoning, but the decision of the trial court is primarily what matters, not the reasoning used. Even when based on erroneous reasoning, a conclusion or decision of a trial court will generally be affirmed if the evidence or an alternative theory supports it."); *see also Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1269–70 (11th Cir. 2008).

B. Oasis' Proposed Jury Instruction 22 Based on Violation of the Florida's Rules Related to Professional Conduct is Not Allowed under Florida Law.

Additionally, the District Court correctly denied Oasis' proposed Jury Instruction 22 addressing informed consent in the context of limiting an attorney's scope of representation. (DE. 218, p. 40). Oasis is correct that Rule 4-1.2(c) of the Rules Regulating the Florida Bar discusses the limitation of objections and scope of representation by a lawyer. *See* R. Regulating the Fla. Bar 4-1.2(c). However, the proposed Jury Instruction 22 does not state this rule exactly. *See id.*

More concerning is the use of Florida's rules related to professional conduct as grounds for relief in a civil action. Indeed, Florida's Rules Regulating the Florida Bar do "not create a legal duty on the part of the lawyer nor constitute negligence per se, although it may be used as some evidence of negligence." *Pressley*, 579 So.

2d at 161. The preamble to Chapter 4 of the Rules of Professional Conduct specifically addresses this concern:

> **Violation of a rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption that a legal duty has been breached.** . . . The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. **They are not designed to be a basis for civil liability.** Furthermore, the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule. Accordingly, **nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating a substantive legal duty**. . . .

R. Regulating the Fla. Bar, Chapter 4 – Preamble (emphasis added).

Considering these authorities, it does not appear that the instruction would suffice as an accurate statement of the law. *See Roberts*, 153 F.3d at 1295. Even if the proposed jury instruction correctly stated a legal standard, violation of that professional rule could not be used as to give rise to Oasis' cause of action against Appellees. *See Pressley*, 579 So. 2d at 161; R. Regulation the Fla. Bar, Chapter 4 – Preamble. Moreover, the issue of limiting the scope of representation was not before the jury because the scope of the representation was never firmly established related to the filing of the UCC-1 financing statement, as acknowledged by Oasis. (IB. 39) (stating the jury was not instructed on how to "assess the circumstance in which the parties were silent about a UCC-1.").

Lastly, there was no prejudice to Oasis since the jury heard conflicting testimony and evidence by the parties regarding the representation and whether that amounted to civil liability on the party of Appellees. Jury instructions are not the forum to resolve conflicting evidence since "[i]t is the jury's task—not [the court's]—to weigh conflicting evidence and inferences, and determine the credibility of witnesses." *Shannon v. Bellsouth Telecomms., Inc.,* 292 F.3d 712, 715 (11th Cir. 2002) (quoting *Lipphardt v. Durango Steakhouse of Brandon, Inc.,* 267 F.3d 1183, 1186 (11th Cir. 2001)); *see* (DE. 240, pp. 2-4) (final jury instructions requiring jury follow the instructions and consider the evidence and credibility of witnesses). To be sure, the District Court acted within its discretion in rejecting this proposed instruction, as it was more appropriate to be addressed by the experts:

> We have, of course, the basic default rule that a violation of the rules of professional conduct doesn't create a legal duty on the part of the lawyer nor constitute negligence per se. There is a dispute in this case about the standard of care, vis-á-vis lawyers, and that has been explored by two competing experts. So I don't think it's appropriate to selectively pluck items from the professional rules, either this one or the other one you mentioned before we took the break.

(DE. 265, p. 144:1-9). Having not demonstrated a basis for reversal, this Court should affirm.

C. <u>Oasis' Proposed Jury Instruction 33 Based on Ambiguity in the Scope of Legal Representation was Not Before the Jury.</u>

Prior to trial, Oasis proposed Jury Instruction 33 as to the ambiguity of legal representation. (DE. 218, p. 53). Appellees objected that this went beyond the scope

of the pleadings, and Appellees did not consent for this issue to be tried. (DE. 218, p. 53).

However, at the time of the charge conference, the District Court had granted Appellees' motion for judgment as a matter of law on the contract claims. ((DE. 265, pp. 5:20 – 6:25). While Oasis maintained the proposed Jury Instruction 33 was still relevant despite dismissal of the contract claims, (DE. 265, p. 154:23 – 155:7), Appellees objected that this instruction would confuse the jury since the contract claims were not being submitted to the jury and the proposed instruction was argumentative. (DE. 265, p. 155:9-20). The District Court agreed that the proposed instruction would confuse the jury "in light of the absence of a breach of contract claim" because "it wouldn't be tied in any reasonable way to any claims." (DE. 265, p. 155:21-24).

On appeal, Oasis argues proposed Jury Instruction 33 was a correct statement of Florida law based on cases involving fee agreements and retainer agreements. *See Vargas v. Schmeitzer-Ramras*, 878 So. 2d 415, 417 (Fla. 3d DCA 2004); *Arabia v. Siedlecki*, 789 So. 2d 380, 383 (Fla. 4th DCA 2001); *Jaye v. Royal Saxon*, 687 So. 2d 978, 982 (Fla. 4th DCA 1997). Even if these authorities accurately reflect Florida law on that issue, this was beyond the scope of Oasis' claims. *See Roberts*, 152 F.3d at 1295. Perhaps more importantly, this instruction did not deal "with any issue properly before the jury" because the contract claims were disposed of previously

by a Rule 50 motion. (DE. 265, pp. 5:20 – 6:25). Because there was no evidence sufficient to justify the instruction, the District Court could not instruct the jury on an unsupported contract legal theory. *See Bank S. Leasing*, 778 F.2d at 706.

Any prejudicial harm to Oasis occurred at its own shortcoming of failing to prove the contract claims. (DE. 265, pp. 5:20 – 6:25). This makes *Rich v. Med-National Inc.*, 134 F.3d 383 (10th Cir. 1998) inapposite as the contract claims in that case were submitted to the jury but without "plaintiff's requested instructions regarding contract construction and ambiguity." *Rich*, 134 F.3d at *4. Moreover, it appears *Rich* did not include similar difficulties faced by Oasis– the actual terms of the contract in question. (DE. 265, pp. 5:20 – 6:25). For these reasons, the District Court correctly denied Oasis' request for the jury to be instructed on proposed Jury Instruction 33.

## III. Judgment As a Matter of Law Was Appropriate on Oasis' Contract Claims, As Well As to Limit the Amount of Damages Requested from The Jury Related to The Generex Bankruptcy.

A district court may grant a motion for judgment as a matter of law in favor of the defendant after plaintiff "has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . ." Fed. R. Civ. P. 50(a)(1)(A). "The standard for granting the motion is a demanding one." *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1130 (11th Cir. 2018). A Rule 50(a) motion should

only be denied and the case submitted to the jury where there is "substantial evidence [that] exists in opposition to the motion such that reasonable people, exercising impartial judgment, might reach differing conclusions . . ." *Williams v. Dresser Indus., Inc.*, 120 F.3d 1163, 1167 (11th Cir. 1997).

### A. No Evidence Supported the Provisions of Any Contract or Agreement Entered into by Oasis and Appellees.

To prevail on a breach of contract claim, Florida law requires a plaintiff to prove the existence of a valid contract that was materially breached by the defendant that resulted in damages to the plaintiff. *See Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (citing *Abruzzo v. Haller,* 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)). However, Oasis did not present sufficient evidence of the provisions of any agreement that existed at the time of Appellees' retention, or that it was in materially breached, thereby precluding Counts 3 and 4 from being determined by the jury. (DE. 265, pp. 5:21 – 6:25).

On appeal, Oasis does little to identify the sufficient evidence to show the provisions of the contract at the time of retention. The argument highlights testimony by Long that does not demonstrate the provisions of a contract between Oasis and Appellees that required a UCC-1 financing statement to be filed. (IB. 40). Indeed, the evidence fails to demonstrate the terms of any agreement between Oasis and Appellees. (DE. 264, pp. 236:18 – 238:16). Oasis acknowledged that there was no written agreement for the terms that would require the filing of a UCC-1 financing

statement. (DE. 264, pp 238:17-22) (acknowledging theory was not one of a written contract).

Oasis argued below, and now on appeal, that the case of *Weekley v. Knight*, 156 So. 625 (Fla. 1934) should have allowed the contract claims to stand. Specifically, Oasis quotes *Weekley* for the proposition that "one has a cause of action ex contractu against an attorney who neglects to perform the services which he agrees to perform for a client or which by implication he agrees to perform when he accepts employment by a client." *Weekley*, 156 So. at 626. Oasis further cites an additional Florida intermediate appellate court decision for a similar position. *Kartikes v. Demos*, 214 So. 2d 86 (Fla. 3d DCA 1968) ("A client has a cause of action in contract against an attorney who neglects to perform services he explicitly or implicitly agreed to perform when he agreed to be employed by the client."). However, these cases and any reliance on them are misplaced.

Both *Weekley* and *Kartikes* addressed the pleading standing for breach of contract. *See Weekley*, 156 So. at 722 (sustaining demurrer as allegations were not sufficient to allege cause of action); *Kartikes*, 214 So. 2d at 87 (reversing order granting motion to dismiss to allow cause of action to proceed). However, the pleading standard is the requirement for a plaintiff to enter the courthouse. *See Bell Atlantic Corp. v. Twombly¸* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *United States v. Stevens*, 994 So. 2d 1062, 1069 (Fla. 2008) ("In the instant

case, we have no way of knowing whether Stevens will ultimately be able to prove a case against the defendants. However, we conclude that Stevens' allegations are sufficient to open the courthouse doors."). This standard is a far cry from that at the trial stage where a Rule 50 motion for judgment as a matter of law challenges the sufficiency of the plaintiff's evidence. *Compare* Fed. R. Civ. P. 8(a) (general rules of pleading for asserting a claim for relief) *with* Fed. R. Civ. P. 50(a)(1) (motion for judgment as a matter of law). Indeed, Rule 50 "take[s] a case away from the jury," *Enwonwu v. Fulton-Dekalb Hosp. Auth.*, 286 Fed. Appx. 586, 599 (11th Cir. 2008), whereas pleading stage requires "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570.

Oasis also relies on *Solomon v. Meyer*, 116 So. 2d 37 (Fla. 3d DCA 1959), which is equally unavailing. (IB. 42-43). Even though *Solomon* addressed a summary judgment order that was reversed on appeal, summary judgment was granted based on allegations in the complaint. *See Solomon*, 116 So. 2d at 38 (rejecting appellees' argument that "summary judgment was properly entered because all of the facts were determined by the allegations of Solomon in his complaint with exhibits attached thereto").

Whether Oasis could assert claims for relief sounding in breach of contract does not satisfy its burden at trial as to whether sufficient evidence was provided for the breach of contract claims in Counts 3 and 4 to be determined by a jury. Even

considering the evidence, it was insufficient to support the existence of a contract. Appellees acknowledged there was "some testimony" presented regarding as "retention agreement." (DE. 264, p. 237:22-23). However, there was "no testimony about the terms, the scope, what was or was not supposed to be done." (DE. 264, p. 237:23-25). Lack of those provisions would preclude any breach of those unidentified terms. (DE. 264, p. 238:7-16).

To the extent Oasis argues the timing of the retention, this assumes that *Weekley* and *Kartikes* would apply at the procedural juncture of a Rule 50 motion. Even still, both cases use phrases such as "when he accepts employment by a client" and when he agreed to be employed by the client . . ." (IB. 41) (quoting *Weekley* and *Kartikes*).

Lastly, whether a UCC-1 financing statement was filed by Nason Yeager as its "very first transaction" for Oasis does not demonstrate that the filings of such documents was a material provision of the contract when retained. *See* (IB. 41) (referencing DE. 248-9). If an attorney "promises a client to do something and the attorney fails to do it," (IB. 41), it can only serve as evidence of a breach of contract if the provisions of the contract exists. *See Herssein Law Group v. Reed Elsevier, Inc.*, 594 Fed.Appx. 606, 608 (11th Cir. 2015) (""It is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached.") (quoting *Harris*

*v. Am. Postal Workers Union,* 198 F.3d 245 (6th Cir. 1999)). The inability to identify the provisions of a contract preclude proof of breach of those provisions. *See id*. Therefore, this Court should affirm the judgment as a matter of law entered as to Counts 3 and 4 for breach of contract.

B. Oasis Failed to Present Any Evidence Regarding Collectability, Thereby Limiting the Amount of Damages for the Generex Transactions.

In claiming legal malpractice, a plaintiff bears the burden "to prove the collectibility of the judgment which would have been obtained in the underlying action but for the attorney's negligence, in order to establish the amount of damages proximately caused by the negligence." *Fernandes v. Barrs*, 641 So. 2d 1371, 1376 (Fla. 1st DCA 1994), *disapproved of on other grounds by Chandris, S.A. v. Yanakakis*, 668 So. 2d 180 (Fla. 1995). Requiring a plaintiff to prove collectability "prevents a windfall to the client by preventing him from recovering more from the attorney than he could have actually obtained from the tortfeasor in the underlying action." *Id.* Satisfying this burden ordinarily occurs by plaintiff providing "evidence of the original tortfeasor's financial status, insurance coverage, property ownership, and so forth if such evidence can be obtained." *Id.* (citing *McDow v. Dixon,* 226 S.E.2d 145, 148 (Ga. Ct. App. 1976)).

This Court should affirm the District Court's limitation of damages allowed to be presented to the jury based on the involuntary petition for bankruptcy. At trial,

Oasis did not present any expert testimony regarding collectability of the judgment. Instead, Appellees presented expert testimony by Mark Parisi, a certified forensic accountant, who explained the importance of preparing financial statements and auditing. (DE. 265, pp. 15:17-18, 18:25 – 19:8). After being qualified as an expert, Parisi testified that, in his opinion, "Generex would not have been able to continue as a going concern and that it was insolvent. Additionally, . . . Generex would not have been able to pay the maximum amount of the notes due and it was no collectible." (DE. 265, pp. 20:24 – 21:4). Parisi pointed to information started in July 2020 which demonstrated "substantial doubt about Generex's ability to continue to pay its debts in the ordinary course of business for the foreseeable 12 months." (DE. 265, p. 21:11-13). This "going concern disclosure continued in the next 10-Q from October 2020, January 2021, and as well as April '21. (DE. 265, p. 21:20-21). Parisi explained that Generex had "$60 million of working capital deficit" which referred to the amount of "current assets," meaning "cash and accounts receivable," as "compared to their current liabilities, meaning your accounts payable or similar to what you have on your credit cards. And those liabilities are due in less than a year." (DE. 265, pp. 21:23 – 22:4). Parisi noted this figure did not include Generex's "long term liabilities." (DE. 265, p. 22:5-6).

Additionally, Parisi testified that Generex was placed in receivership based on the negative impact of the COVID pandemic. (DE. 265, p. 22:7-13). This was

furthered by Generex's history of inability "to pay its debts." (DE. 265, p. 22:14-15); *see* (DE. 265, p. 22:15-24). With this, Parisi described the "presumption of insolvency" since Generex was unable to "keep the lights on." (DE. 265, p. 23:15-23).

As to Generex not being collectable, Parisi testified as follows:

> So ultimately when Generex was sold, the components of Generex was sold, the main assets of Generex, those subsidiaries which weren't generating cash flow, it only generated $3.35 million of cash, and that's before consideration of the professional fees that went in to generating those -- or the sales and the subsequent bankruptcy activity. So considering the balance of the notes is way higher than those assets, that's all -- that's all that's there.
>
> And then the claims body alone is $85 million; that's the amount of people who filed claims in the bankruptcy. And the actual amount of scheduled claims was 500 million. So that just goes to show you the exposure Generex had to liabilities relative to its tiny pool of assets.

(DE. 265, p. 24:3-16).

Despite Parisi's testimony, there was no evidence and no expert presented by Oasis to prove collectability. *See Fernandes*, 641 So. 2d at 1376. Indeed, there was no evidence "that Generex would not have gone into bankruptcy." (DE. 265, p. 161:8-9). The only evidence presented was speculative which is insufficient for Oasis to meet its burden. *See Galloway v. U.S.*, 319 U.S. 372, 395, 63 S.Ct.1077, 87 L.Ed. 1458 (1943) (explaining "the essential requirement is that mere speculation be not allowed to do duty for probative facts, after making due allowance for all reasonably possible inferences favoring the party whose case is attacked"); *Kaye v.*

*Pawnee Construction Co.,* 680 F.2d 1360, 1364 (11th Cir.1982) ("A mere scintilla of evidence is insufficient to present a question for the jury; there must be a conflict in substantial evidence to create a jury question."). Failure to provide evidence to demonstrate that, but for Appellees' action Generex would not have petitioned for bankruptcy, was fatal to any claim for damages over the $2,450,000.00 amount as stipulated by the parties. This Court should affirm.

## CONCLUSION

For the reasons previously set forth, Appellees, Nason, Yeager, Gerson, Harris & Fumero, P.A., and Brian S. Bernstein, Esq., respectfully request this Court affirm the Final Judgment entered in their favor and against Oasis.

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

This brief complies with the type-volume limitations of Fed. R. App. P. 32 (a)(7)(B) because this brief contains 11,465 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the type-face requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 in Times New Roman font, size 14.

By: *__/s/ Therese A. Savona__*
THERESE A. SAVONA, B.C.S.
Florida Bar No.: 077618
*Counsel for Appellees*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 10th day of November, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system, which will serve a copy of the foregoing to: **Evan L. Frank, Esq.** and **Alan L. Frank, Esq.**, Alan L. Frank Law Associates, PC, 135 Old York Rd, Jenkintown, PA 19046, *Counsel for Appellant*; and **Zach Shelomith, Esq.,** 2699 Stirling Road, Suite C401, Fort Lauderdale, FL 33312, *Counsel for Appellant.*

Respectfully submitted,

COLE, SCOTT & KISSANE, P.A.
*Counsel for Appellees*
Tower Place – Suite 400
1900 Summit Tower Boulevard
Orlando, Florida 32810
Telephone: (321) 972-0071
Facsimile: (321) 972-0000
Therese.Savona@csklegal.com
Emily.Fernandez@csklegal.com
Dusty.Robertson@csklegal.com

By: */s/ Therese A. Savona*
THERESE A. SAVONA
FBN: 77618